### COLUMBIAN NAT. LIFE INS. CO. v. FOULKE.

#### No. 10708.

Circuit Court of Appeals, Eighth Circuit.

April 1, 1937.

262

STONE, Circuit Judge, dissenting.

———◆———

David A. Murphy, of Kansas City, Mo. (John T. Harding, R. C. Tucker and John Murphy, all· of Kansas City, Mo., on the brief), for appellant.

Whitson Rogers, of Kansas City, Mo. (John S. Wright and Abraham E. Margolin, both of Kansas City, Mo., on the brief), for appellee.

Before STONE, GARDNER, and WOODROUGH, Circuit Judges.

## WOODROUGH, Circuit Judge.

The Columbian National Life Insurance Company, a Massachusetts corporation, has appealed from an order dismissing its petition for declaratory judgment under section 274d of the Judicial Code (28 U.S. C.A. 400). It alleged in the petition that it had issued a policy insuring one Edward L. Foulke against loss resulting from bodily injuries effected directly and independently of all other causes from accidental means and providing that if such injuries resulted in the death of said Edward L. Foulke within 90 days of the accident causing such injuries the Insurance Company would pay Nelle Foulke the principal sum therein stated, to wit, $7,500. It·alleged further that said Edward L. Foulke came to his death at a time when the policy was in full force and effect, but that his death resulted from and was due to natural causes and did not result from any injuries effected directly and independently of all other causes through accidental means. Nelle Foulke, of Kansas City, Mo., the beneficiary of the policy, was made defendant and it was alleged that she "claims and asserts that the death of the said Edward L. Foulke was the result of bodily injuries effected directly and independently of all other causes through accidental means" and that the Insurance Company "is obligated to her under the provisions of said policy in the sum of $7,500.00," and that "she has demanded that plaintiff make such payment to her." It was also alleged, "There is an actual controversy between plaintiff and defendant as to the obligation of the plaintiff to the defendant arising out of the aforesaid claim and demand of defendant under said policy, and the aforesaid denial thereof by the plaintiff." The prayer of the petition was that the court "declare the rights of the defendant and the obligations of the plaintiff under said policy in accordance with the provisions of section 274d of the Federal Judicial Code."

The defendant, Nelle Foulke, demurred to the petition on the grounds: "1. That said petition does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant. 2. That said petition does not state a justiciable controversy. 3. That said petition shows upon its face that plaintiff is not entitled to any relief under the declaratory judgment law." The District Court sustained the demurrer (13 F.Supp. 350, 352), and, the plaintiff having refused to plead further, the judgment of dismissal followed.

■ It appears from the opinion of the trial court that the judge first gave careful consideration to the question whether a "case of actual controversy" was presented by the allegations of the petition within the intendment of the federal declaratory judgment statute set out in full in the footnote to his opinion. The court decided that the question was settled in plaintiff's favor by Nashville, etc., R. Co. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730, 87 A. L.R. 1191, and said: "In the light of this precedent, it cannot be said that a proceeding for a declaration that an insurance company is not liable on an insurance contract to the beneficiary under the contract after the death of the insured during the life of the contract is not a 'case' or 'controversy.'"

We agree with the District Court's conclusion, as stated.

■ The trial court also expressed the opinion that the declaration of the plaintiff's petition to the effect that the plaintiff, notwithstanding the death of the insured within the life of the policy and notwith-

standing the claims and demands of the defendant, was not liable to the defendant beneficiary on account of the policy "is not a declaration of a right the plaintiff has or had" (within the meaning of the act). On this issue we have come to the conclusion that the plaintiff's alleged right to be immune from the claim the defendant makes against it under the policy is a "right" which it may petition to have declared by the terms of section 274d. We think our conclusion is in accordance with Nashville, etc., R. Co. v. Wallace, supra, and Aetna Life Insurance Company v. Edwin P. Haworth and Cora M. Haworth, 57 S.Ct. 461, 81 L.Ed. ——, decided March 1, 1937.

It is contended for the beneficiary, Nelle Foulke, that a declaratory judgment suit does not lie where other adequate remedy at law or in equity exists. The argument is that the Insurance Company may wait until it has been sued and can then defend itself, so that it must be deemed to have adequate remedy without resort to this declaratory judgment suit. It is not contended that there is any other procedure open to the Insurance Company by which it could presently obtain relief from the claims and demands which it alleges the defendant is wrongfully making against it. The position of appellee finds some support in cases that have arisen under state laws and possibly in Zenie Bros. v. Miskend et al. (D.C.) 10 F.Supp. 779. But we find no support in the federal act. The act says nothing about limiting proceedings under it to cases where there are no other forms of action in which the rights of the parties may ultimately be determined. It refers only to "cases of actual controversy," and in such cases the courts of the United States are empowered to declare rights and other legal relations of any interested party petitioning for such declaration.

The appellee Nelle Foulke also presents that "it was discretionary with the lower court whether to entertain the petition for declaratory judgment" and "its discretion properly should not be reviewed by this court." She cites the following cases: Zenie Bros. v. Miskend, supra; Automotive Equipment, Inc., v. Trico Products Corporation (D.C.) 11 F.Supp. 292; New Discoveries v. Wisconsin Alumni R. Foundation (D.C.) 13 F.Supp. 596; Zeigler v. Pickett, 46 Wyo. 283, 25 P.(2d) 391; Newsum et al. v. Interstate Realty Co. et al., 152 Tenn. 302, 278 S.W. 56; Ladner et al. v. Siegel et al., 294 Pa. 368, 144 A. 274; Washington-Detroit Theatre Co. v. Moore, 249 Mich. 673, 229 N.W. 618, 68 A.L.R. 105; and 28 U.S.C.A. § 400. See Borchard, Declaratory Judgments, p. 99 et seq.

But the record does not disclose that either of of the parties invoked the exercise of judicial discretion in the trial court or that any question concerning such discretion was presented or any ruling thereon preserved for review. The defendant's demurrer, above set forth in full, asserts a failure "to state facts sufficient to constitute a cause of action," the absence of "a justiciable controversy" and "that the petition shows upon its face that plaintiff is not entitled to any relief under the declaratory judgment law." The District Court sustained the demurrer as laid and having done so, dismissed the case when the plaintiff failed to plead further, and that action is the sole matter for review. The appellee also says in her brief that special circumstances existed and were "learned" by the trial court which justified the exercise of discretion to dismiss the petition. But the record presents no basis for a ruling by this appellate court upon the matter of judicial discretion argued by appellee and we make none. The trial court erred in sustaining the demurrer.

Reversed and remanded for further proceedings in conformity with this opinion.

STONE, Circuit Judge (dissenting).

I agree with the majority opinion that "a case of actual controversy" exists within the meaning of the Declaratory Judgment Act (28 U.S.C.A. § 400) and the Constitution. Also, I agree that the act *may* apply where the petitioner seeks to have determined presently his liability upon a contract where such liability has ripened and he could be proceeded against at law or in equity. I cannot agree that the act covers a situation where "other *adequate* remedy at law or in equity exists" (italics added), which seems to be announced in the majority opinion.

If the paragraph in the majority opinion means what I think it does, then a declaratory judgment may be sought, within the act, no matter how completely, how adequately, how all sufficiently existing legal or equitable remedies would protect every right of the petitioner in the situation in which he finds himself at the time he files his petition. If this be true, then proceedings under the act can be used to *replace* all

existing judicial remedies under any and all circumstances and without limit. Most respectfully, I suggest that this is attributing to Congress an intention—said to be expressed in this act—which is neither justified nor tenable in view of the known purposes of the Congress in enacting the statute. In this most important regard, I think such a construction is directly opposed to the intent of Congress. The intent of Congress was to provide a remedy in the legal situations where no existing remedy would lie [1]

[1] The report of the Senate Judiciary Committee (Rep. No. 1005, Seventy-Third Congress, Second Session) clearly states repeatedly the anticipatory character of the new remedy. That portion of the report (italics added) is as follows:

"Nature of the Declaratory Judgment.

"The declaratory judgment differs in no essential respect from any other judgment except that it is not followed by a decree for damages, injunction, specific performance, or other immediately coercive decree. It declares conclusively and finally the rights of parties in litigations over a contested issue, a form of relief which often suffices to settle controversies and fully administer justice. It enables parties in disputes over their rights over a contract, deed, lease, will, or any other written instrument to sue for a declaration of rights, *without breach of the contract*, etc., citing as defendants those who oppose their claims of right. It has been employed in State courts mainly for the construction of instruments of all kinds, for the determination of status in marital or domestic relations, for the determination of contested rights of property, real or personal, and for the declaration of rights contested under a statute or municipal ordinance, *where it was not possible or necessary to obtain an injunction.*

"In the case of Newsum v. Interstate Realty Co. (1925) 152 Tenn. 302, 278 S.W. 56, the court stated:

"'A declaratory judgment is essentially one of construction. It is apparent from the history of the legislation providing for this procedure, as well as from the recitals of the Uniform Declaratory Judgments Act itself, that its primal purpose is the construction, of definitely stated rights, status, and other legal relations, commonly expressed in written instruments, although not confined thereto.'

"The limitations and condition upon the rendering of such judgment are well stated in the case of Braman v. Babcock (1923) 98 Conn. 549, 120 A. 150, 151, in which it was held that the Connecticut act, which closely resembles the proposed Federal act, authorizes—

"'the superior court to render final judgments as to the existence or nonexistence of any right, power, privilege, or immunity, or of any fact upon which the existence or nonexistence of such right, power, privilege, or immunity may depend. * * * The party seeking such a judgment must have an interest legal or equitable *by reason of danger of loss or of uncertainty* as to his rights or other jural relations, and that there is an actual bona fide and substantial question or issue in dispute, or *substantial uncertainty of legal relations which requires settlement* between the parties, and that all persons having an interest in the complaint are parties to the proceeding, or have reasonable notice, *and the court is of the opinion that the parties should not be left to seek redress in some other form of procedure*, and that issues of fact may be submitted to the jury, and the decision of the court shall be final and subject to review by appeal.'

"*The procedure has been especially useful in avoiding the necessity, now so often present, of having to act at one's peril or to act on one's own interpretation of his rights, or abandon one's rights because of a fear of incurring damages. So now it is often necessary, in the absence of the declaratory judgment procedure, to violate or purport to violate a statute in order to obtain a judicial determination of its meaning or validity.* Compare Shredded Wheat Co. v. City of Elgin (1918) 284 Ill. 389, 120 N.E. 248, where the parties were denied an injunction against the enforcement of a municipal ordinance carrying a penalty, and were advised to purport to violate the statute and then their rights could be determined, with Erwin Billiard Parlor v. Buckner (1927) 156 Tenn. 278, 300 S.W. 565, where a declaratory judgment under such circumstances was issued and settled the controversy. So now it is often necessary to break a contract or a lease, or act upon one's own interpretation of his rights when disputed, in order to present to the court a justifiable controversy. In jurisdictions having the declaratory judgment procedure, it is not necessary to bring about such social and economic waste and destruction in order to obtain a determination of one's rights. There was filed with the committee and printed in the hearings a number of annotations from Carmody's New York practice act, in which the compiler undertook to compare the relief obtainable under the declaratory judgment procedure, *without the necessity of prior breach*, with the old practice of having first to break

or where an existing remedy which was available was inadequate to completely protect.[2]

In some jurisdictions, this effect has been worked out through the announcement of a discretion in the trial court in the use of this remedy (New York Life Ins. Co. v. London, 15 F.Supp. 586, 590 (D.C.D.Mass.); New Discoveries, Inc., v. Wisconsin Alumni Research Foundation, 13 F.Supp. 596, 599 (D.C.W.D.Wis.); Automotive Equipment, Inc., v. Trico Products Corporation, 11 F. Supp. 292, 294 (D.C.W.D.N.Y.); Zenie Bros. v. Miskend, 10 F.Supp. 779, 782 (D. C.S.D.N.Y.); Newsum v. Interstate Realty Co., 152 Tenn. 302, 305, 278 S.W. 56, 57; Petition of Kariher, 284 Pa. 455, 471, 131 A. 265, 271; Zeigler v. Pickett, 46 Wyo. 283, 293, 25 P.(2d) 391, 393; Russian Com. & Ind. Bank v. British Bank for Foreign Trade [H.L.1921] 2 A.C. 438, 440, 453; Guaranty Trust Co. v. Hannay & Co. [1915] 2 K.B. 536, 564, 565; Dyson v. Attorney-General [1911] 1 K.B. 410, 417. It seems to me this result should, in order to make the intention of Congress effective, be regarded as a matter of jurisdiction. So viewed, the petition under the act must state the fact relied upon to show that existing legal or equitable remedies will not *adequately* protect the petitioner. The petition here makes no attempt to do this. Therefore, I think it failed to state a cause of action, and that such failure was challenged by the first and third grounds of the demurrer here filed. I think the judgment should be affirmed.

---

contracts or act on one's own interpretation in order to obtain a judicial determination. The comparison is enlightening. There seems little question that in many situations in the conduct of business serious disputes occur between parties, where, if there were a possibility of obtaining a judicial declaration of rights in a formal action, much economic waste could be avoided and social peace promoted. Persons now often have to act at their peril, a danger which could be frequently avoided by the ability to sue for a declaratory judgment as to their rights or duties.

"The fact is that the declaratory judgment has often proved so necessary that it has been employed under other names for years, and that in many cases the injunction procedure is abused in order to render what is in effect a declaratory judgment. For example, in the case of Pierce v. Society of Sisters (1925) 268 U. S. 510, 525, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468, the court issued an injunction against the enforcement of an Oregon statute which was not to come into force until 2 years later; in rendering a judgment declaring the statute void, the court in effect issued a declaratory judgment by what was, in effect, apparently, an abuse of the injunction. See, also, Village of Euclid v. Ambler Realty Co. (1926) 272 U.S. 365, 47 S.Ct. 114, 71 L. Ed. 303, 54 A.L.R. 1016. Much of the hostility to the extensive use of the injunction power by the Federal courts will be obviated by enabling the courts to render declaratory judgments.

"An important practical advantage of the declaratory judgment lies in the fact that it enables litigants to narrow the issue, speed the decision, and settle the controversy before an accumulation of differences and hostility has engendered a wide and general conflict, involving numerous collateral issues. Some of the illustrations in Carmody's Annotations are in this respect enlightening.

"Representative Ralph Gilbert in discussing this bill in the House of Representatives on January 25, 1928, described the declaratory judgment procedure as follows:

"You have the same court, the same jurisdiction, the same procedure, the same parties and the same question. *Under the present law you take a step in the dark and then turn on the light to see if you have stepped into a hole. Under the declaratory judgment law you turn on the light and then take the step.*"

[2] An instance of this field of the act is Ætna Life Ins. Co. v. Haworth, 57 S. Ct. 461, 81 L.Ed. —— where the petition alleged that the failure of respondent to bring an action for enforcement of the policy opened petitioner to loss of evidence and to continued maintenance of substantial insurance reserves to protect the policy.