## SUN–MAID RAISIN GROWERS OF CALIFORNIA v. AVIS et al.

District Court, N. D. Illinois, E. D.  April 12, 1928.

### No. 7411.

**1. Trade-marks and trade-names and unfair competition ⟞97—Defendants failing to bring patent infringement suit, though plaintiff suggested it, will be enjoined from threatening plaintiff and customers with such suit.**

Raisin growers association *held* entitled to injunction against owners of patent for grape syrup to enjoin them from threatening plaintiff and its customers with suit for infringement, where plaintiff had suggested that defendant institute suit to determine whether there was infringement, but no suit was brought.

**2. Courts ⟞343—Nonresident defendants held not indispensable parties, and court not without jurisdiction of suit to enjoin threatening patent infringement suit, notwithstanding failure to serve such defendants.**

In suit to enjoin defendant from threatening plaintiff with patent infringement suit court is not without jurisdiction because those defendants who were nonresident co-owners of patent were not served with process, since such nonresident defendants are not indispensable parties.

**3. Courts ⟞328(3)—In suit to restrain defendants from threatening infringement suits, jurisdictional amount is tested by value of object to be gained.**

In suit to restrain defendants from threatening patent infringement suit, jurisdictional amount is to be tested by value of object to be gained by complainant.

In Equity.  Suit by the Sun-Maid Raisin Growers of California against Sam Avis and others. Decree for plaintiff against defendant Abraham Y. Ameer.

Cromwell Greist & Warden, of Chicago, Ill., for plaintiff.

Bartel & McCormick, of Chicago, Ill., for defendants.

LINDLEY, District Judge.  Plaintiff, a nonprofit, co-operative agricultural association, organized under the laws of the state of California, brought this suit against defendants to enjoin them from threatening plaintiff and its customers with suit for infringement by reason of the manufacture and sale of plaintiff's raisin syrup. Defendants Avis, Ameer, Younan, and Baboo are owners of patent 1,381,613, granted June 14, 1921, for grape syrup. Service was procured upon only one of them, Ameer; the others being nonresidents of this district. There is no evidence against defendant, Bartel, and the suit is dismissed as to him for want of equity, at the costs of plaintiff.

On March 31, 1926, defendant Ameer and his co-owners of the patent served a formal notice of infringement upon plaintiff and the Sun-Maid Raisin Growers' Association. Plaintiff denied the infringement, and suggested to defendants that, in order to determine whether there was infringement, the latter institute suit. On January 17, 1927, the patentees, having demanded $500,000 for a sale of the Avis patent, and having received an offer of only $10,000, sent to each member of the advisory council of plaintiff a letter, notifying them personally, and as representatives of the plaintiff and of the Sun-Maid Raisin Growers' Association, a Delaware corporation, and its subsidiaries, and as representatives of the individual members of the Sun-Maid Raisin Growers of California, that suit would be begun for infringement unless the manufacture and sale of grape syrup ceased. On August 15, 1927, patentees sent to various customers of plaintiff letters notifying them that they were infringing and threatening suit, and in September of 1927 plaintiff instituted this suit. Plaintiff has at all times denied the infringement, and stated that it is ready and anxious to defend any suit which defendants might elect to bring. No such suit had been brought, although acts sufficient to constitute infringement have occurred in this district.

Plaintiff has a membership of approximately 13,000 raisin grape growers, and its corporate activities are centered in the marketing of these grapes. It owns the stock of the Delaware corporation, Sun-Maid Raisin Growers' Association, which manufactures

for plaintiff into raisins and raisin syrup the grapes grown by plaintiff's members. The products are sold by Sunland Sales Co-operative Association and Sunland Sales Association. Plaintiff receives all of the profits from the manufacture and sale of its goods. The good will of the business is in plaintiff. The other corporations exist merely for the purpose of carrying out its corporate activities, and the products are put out under plaintiff's name. The notices complained of have been sent to the plaintiff, its subsidiaries, the advisory council of the plaintiff, and to plaintiff's customers, and have extended over a substantial period. The letter of August 15, 1927, was sent to a great number of customers, some of whom did not handle the syrup alleged to be an infringement but purchased only raisins, about which there was no complaint. Not being purchasers of syrup, some of these customers were immediately alarmed concerning the sale of such products of plaintiff as they were handling, and demanded guaranties. Plaintiff was compelled in many instances to execute such guaranties and to circularize its trade, advising its patrons that it stood ready and willing to protect them. The acts complained of, therefore, were of three characters: (1) To threaten plaintiff and its subsidiaries; (2) to threaten plaintiff's growers and source of supply; and (3) to threaten the trade. They were successive in time, covering a period of nearly two years. The customers thus far addressed are limited to the localities of Fresno, Los Angeles, and Chicago, and plaintiff contends that a similar letter sent to dealers in other important centers will have a most demoralizing effect upon its agents and selling organization. It avers a desire for the opportunity to conduct its business peacefully and without oppressive threats of infringement concerning it and its customers. The defendant contends it has no intention of sending further notices or making further threats.

[1] The court is of the opinion that the application for injunction should be allowed. The law announced in the cases of Emack v. Kane et al. (C. C.) 34 F. 47; Racine Paper Goods Co. v. Dittgen (C. C. A.) 171 F. 631, at 633; Atlas Underwear Co. v. Cooper Underwear Co. (D. C.) 210 F. 347; Panay v. Aridor (C. C. A.) 292 F. 858; Adriance, Platt & Co. v. National Harrow Co. et al. (C. C. A.) 121 F. 827; and A. B. Farquhar Co., Limited, v. National Harrow Co. (C. C. A.) 102 F. 714, 49 L. R. A. 755—supports the plaintiff's basis for relief. In the first-mentioned case, Judge Blodgett remarked

that a man should not be remediless against persistent and continued attacks upon his business; that, instead of such attacks, the one urging infringement should come into court and seek a determination of the validity of his patent and his rights thereunder; that he should not menace the alleged infringer in circulars, letters, or newspapers, but should exercise due diligence in the prosecution of his suit for damages. The language of the Court of Appeals for this circuit in Racine Paper Goods Co. v. Dittgen is similar. There, as here, plaintiff notified defendants to test their patent in court, and yet defendants failed so to do. The court said: "It is unconscionable that appellant should be permitted to use a grant from the government to work a wrong upon appellee without bringing suit to secure a judicial determination. An injunction granted in a proceeding for that purpose would have afforded clearly defined limits to appellant's claims. The course pursued by it herein, by reason of its very indefiniteness, is more onerous and oppressive than would be the order of a court. It was practically prohibitive. It is one of the well-established powers and duties of a court of equity to remedy wrongs such as are here disclosed." In the case of Atlas Underwear Co. v. Cooper Underwear Co. (D. C.) 210 F. 347, Judge Geiger said: "In view of the widespread infringement, according to the view of the defendant, and particularly in view of the rapid development which confessedly has taken place in the last two years, it would seem that the duty rested peculiarly upon the defendant promptly to assert its right by instituting suits to restrain wrongful infringement of its patent, rather than by inaugurating and carrying on a system of terrorizing the trade."

The proper forum for the trial of the controversy between plaintiff and defendants is the court, not circulars and futile correspondence. Only a chancellor receiving all of the evidence may adjudicate the controverted question. Where, as here, there is an entire failure thus upon the patentee's part to assert its rights in a proper forum, the court can only conclude there is some ulterior motive in his actions. As heretofore stated by the Circuit Court of Appeals for this circuit, "the practice of trying suits in newspapers or circulars, in order to scare or daunt competitors, is pernicious." See Panay v. Aridor (C. C. A.) 292 F. 858.

[2] Defendant contends that his co-owners of the patent are necessary parties defendant, and that, because they are not served

with process, this court is without jurisdiction. The writer had occasion to consider the subject of indispensable parties in the recent case of Equitable Trust Co. v. Denney et al., in the Circuit Court of Appeals. The nonresident defendants are not indispensable parties. The court cannot be ousted of its jurisdiction to determine the merits as between plaintiff and defendant because it happens that certain other defendants live out of the district.

[3] Defendant contends also that there is no jurisdictional amount involved. Plaintiff here seeks to continue its business free from oppressive interference by defendant. The evidence shows that business to be extensive and valuable; that some 800 tons of plaintiff's raisin syrup and 30,000 tons of plaintiff's raisins were sold in the territory of Chicago alone in the past two years. The case of Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U. S. 121, 36 S. Ct. 30, 60 L. Ed. 174, is directly in point. There the court said:

"We are unable to discern any sufficient ground for taking this case out of the rule applicable generally to suits for injunction to restrain a nuisance, a continuing trespass, or the like, viz. that the jurisdictional amount is to be tested by the value of the object to be gained by complainant. The object of the present suit is not only the abatement of the nuisance, but (under the prayer for general relief) the prevention of any recurrence of the like nuisance in the future. In Mississippi & M. R. Co. v. Ward, 2 Black, 492, 17 L. Ed. 311, 314, it was said: 'The want of a sufficient amount of damage having been sustained to give the federal courts jurisdiction will not defeat the remedy, as the removal of the obstruction is the matter of controversy, and the value of the object must govern.' The same rule has been applied in numerous cases, and under varying circumstances. * * *

The District Court erred in testing the jurisdiction by the amount that it would cost defendant to remove its poles and wires where they conflict or interfere with those of complainant, and replacing them in such a position as to avoid the interference. Complainant sets up a right to maintain and operate its plant and conduct its business free from wrongful interference by defendant. This right is alleged to be of a value in excess of the jurisdictional amount, and at the hearing no question seems to have been made but that it has such value. The relief sought is the protection of that right, now

25 F.(2d)—20

and in the future, and the value of that protection is determinative of the jurisdiction."

In view of the foregoing, it follows that there will be a decree for the plaintiff against the defendant Ameer, as prayed, at defendant's costs.